JUSTICE TRIEWEILER
specially concurring.
¶34 I concur with the result of the majority Opinion. However, I would arrive at that result for different reasons.
¶35 I agree that the correct test for whether a person has been “seized” within the meaning of the Fourth Amendment or Montana’s independent right to be free from unreasonable searches and seizures found at Article II, Section 11 of the Montana Constitution depends on whether “in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877. However, I disagree with the majority’s conclusion that no seizure occurred in this case when two armed and uniformed law enforcement officers approached the Defendant in a convenience store while he was talking on the phone and, after determining his identity, asked that he come with them. To suggest that any reasonable person would have felt free to ignore the officers’ “request” under those circumstances is to ignore the coercive reality of the circumstances. How was that request any different than when a patrol car pulls up behind a vehicle on the highway with its flashing light activated? Surely the latter example is just a “request” to pull over. Yet for years this Court has held that particularized suspicion is required for such a “request.” In fact, to suggest that people are free to ignore what Wagner was requested to do and proceed on their way under the circumstances would not be in the best interests of law enforcement.
¶36 The U.S. Supreme Court’s decision in Mendenhall, which is relied on by the majority, is distinguishable on its facts. (Neither of the law enforcement officers in that case were uniformed or displaying weapons and the encounter occurred in a large airport which was very public.) If this result could be justified under Mendenhall, then I would apply a more realistic test for what constitutes a seizure for purposes , of applying Article II, Section 11 of the Montana Constitution. Perhaps people in Montana are just more reasonable and when told by two *509 armed and uniformed highway patrolmen to accompany them and would not think of just walking away or ignoring them.
¶37 As far as the prior Montana case law cited in the majority Opinion, it is certainly hard to find a consistent thread for the meaning of an investigative stop when considering this case together with our prior decision in Roberts. In that case, without any directive from law enforcement officers, we held that the mere manner in which they parked their car constituted a seizure. I think most reasonable people would be more concerned with what they were told by police officers than where they happen to park their car.
¶38 Having said all that, I would arrive at the same result as the majority because I would conclude that by the time the officers in this case received a report from an identified citizen informant which was based on that informant’s personal observation and then observed the Defendant’s car where they were told it would be, and observed the Defendant on the phone in the small convenience store where the informant said he would be, “continually swaying” with an odor of alcohol, they had all the particularized suspicion that was necessary in order to make an investigative stop.
¶39 For these reasons, which are different than those set forth in the majority Opinion, I would affirm the judgments in the District Court.